**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE CASTEL

| | |
|---|---|
| JAMES W. WALLIS,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL LYNCH PIERCE FENNER & SMITH, INC.,<br><br>Defendant. | Case No. 04-CV-_____<br>04 CV 8074<br><br>**PETITION TO VACATE ARBITRATION AWARD** |

RECEIVED
OCT 2004
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff James Wallis petitions this Court for an order vacating the award of the arbitrators entered on or about July 15, 2004 in NASD Arbitration No. 02-02816, an arbitration proceeding conducted under the auspices of the National Association of Securities Dealers. Copies of the award and of the agreement to arbitrate are attached to this petition as Exhibits A and B, respectively. In the award, the arbitrators found against Claimant James Wallis and in favor of Respondent Merrill Lynch Pierce Fenner & Smith, Inc.

Plaintiff further petitions for an order requiring a complete rehearing of all claims in a new arbitration proceeding before the NASD.

This petition is filed pursuant to the Federal Arbitration Act, 9 USC §§ 10 - 13. Grounds for the petition are fully set forth in the Memorandum of Law attached and incorporated by reference. Plaintiff also submits an Appendix of Exhibits in support of the Memorandum of Law.

October 13, 2004

Respectfully Submitted,

KIRBY McINERNEY & SQUIRE, LLP

By: *Alice McInerney*
Alice McInerney, Esq. (AM 5484)
Ira M. Press. Esq.
Joanne M. Cicala, Esq.

K. C. Allan, Esq.
830 Third Avenue, 10th Floor
New York, NY 10022
(212) 317-2300

Ronald L. Futterman, Esq.
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
(312) 427-3600

R. Robyn Assaf, Esq.
HENRED LAW CENTER
4312 Classen Boulevard
Oklahoma City, Oklahoma 73118_5099
(405) 525-0777

Attorneys for Plaintiff
James W. Wallis

Exhibit A

**AWARD**
**NASD Dispute Resolution**

In the Matter of the Arbitration Between

Name of Claimant

James Wallis

and

02-02816
Oklahoma City, Oklahoma

Name of Respondents

Merrill Lynch Pierce Fenner & Smith, Inc.
Henry M. Blodget
Merrill Lynch & Co.

Nature of the Dispute: Customer vs. Member, Associated Person and Non-Member

## REPRESENTATION OF PARTIES

James Wallis ("**Claimant**") was represented by K.C. Allan, Esq., and Alice McInerney, Esq., Kirby McInerney & Squire, LLP, New York, New York.

Merrill Lynch Pierce Fenner & Smith, Inc. ("**Merrill Lynch**") was represented by Bruce Day, Esq., A. Ainslie Stanford, II, Esq., and Chris Cavuoti, Esq., Day, Edwards, Propester & Christensen, P.C., Oklahoma City, Oklahoma. Merrill Lynch & Co. ("**Merrill Lynch & Co.**") did not submit to arbitration.

Henry M. Blodget ("**Blodget**") was represented by Joseph D. Edmondson, Esq., Foley & Lardner, Washington, DC.

## CASE INFORMATION

The Statement of Claim was filed on or about May 14, 2002. The Submission Agreement of Claimant James Wallis was signed on or about May 4, 2002. Claimant's Response to Blodget's Motion to Dismiss was filed on or about March 3, 2003. Claimant's Motion to Consolidate was filed on November 11, 2002. Claimant's Reply in Further Support of Motion to Consolidate was filed on or about December 3, 2002. Claimant's Motion to Consolidate or, in the Alternative, to Coordinate Discovery was filed on or about December 27, 2002. Claimant's Reply in Further Support of Motion to Consolidate or, in the Alternative, to Coordinate Discovery was filed on or about February 5, 2003. Claimant's Opposition to Merrill Lynch's Motion to Reconsider was filed on or about March 28, 2003.

The Statement of Answer was filed by Respondent Merrill Lynch Pierce Fenner & Smith, Inc. on or about August 19, 2002. The Submission Agreement of Respondent Merrill Lynch Pierce Fenner & Smith, Inc. was signed on or about August 14, 2002. Respondent Merrill Lynch's Response and Objection to Claimant's "Out of Time" Motion to Consolidate was filed on or about November 29. 2002. Respondent Merrill Lynch's Response and Objection to Claimant's Renewed Motion to Consolidate or, in the Alternative, to Coordinate Discovery was filed on or about January 27, 2003. Respondent Merrill Lynch's Motion to Reconsider Ruling to Coordinate Discovery and Request for Pre-Hearing Conference was filed on or about March 11, 2003.

The Statement of Answer was filed by Respondent Henry M. Blodget on or about August 20, 2002. The Submission Agreement of Respondent Henry M. Blodget was signed on or about September 24, 2002. Respondent Blodget concurs and joins Merrill Lynch's Response and Objection to Claimant's Motion to Consolidate by letter dated November 27, 2002. Respondent Blodget filed a Motion to Dismiss on or about February 11, 2003. Respondent Blodget filed a Reply Memorandum in Support of his Motion to Dismiss on or about March 14, 2003.

Respondent Merrill Lynch & Co. did not submit to arbitration.

## CASE SUMMARY

Claimant asserted the following causes of action: Violation of §10(b) of Securities Exchange Act of 1934;Violation of Oklahoma Statutes Title 71 §408(a)(2)(A); Violation of Oklahoma Statutes Title 71 §408(c)(2); fraud; breach of fiduciary duties; breach of contract and the implied duty of good faith and fair dealing; negligent misrepresentation; failure to supervise; rescission; constructive trust; and, disgorgement. The causes of action relate to the order execution of the Aether Systems, Inc., JDS Uniphase, Juniper Networks, Inc., and SDL Inc. stocks.

Claimant specifically stated the following:

> Claimant established a securities brokerage account at Merrill Lynch and in late 1999 and 2000 invested more than $5 million in Internet and high technology related securities on the basis of Respondents' recommendations. Thereafter, Claimant held many of these securities in his Merrill Lynch account on the basis of Respondents' recommendations. All told, Claimant lost more than $3 million from these investments. At all times relevant herein, Claimant believed that Respondents' investment recommendations (which were circulated in written reports) represented Respondents' truly-held beliefs concerning the value and prospects of the recommended securities and that those beliefs were based on detailed investigations and analysis performed by experienced securities analysts at Merrill Lynch.

Unless specifically admitted in his Answer, Respondent Henry M. Blodget denied the allegations made in the Statement of Claim and asserted the following defenses: Claimant fails to state a claim upon

which relief can be granted; Claimant's claims are barred because the risks inherent in the investments at issue were fully disclosed or known to Claimant and he assumed those risks; Claimant's claims are barred under the doctrine of contributory negligence because he negligently contributed to his own injury to a greater degree than Mr. Blodget allegedly did; Claimant's claims are barred because his alleged injuries were not caused, legally, proximately, or otherwise, by Mr. Blodget; Claimant's claims are barred because there was no privity between Claimant and Mr. Blodget; Claimant's claims are barred because Mr. Blodget did not act with intent, scienter, or in breach of any duty of care or loyalty; Claimant's claims are barred because he failed to mitigate damages; Claimant's claims are barred by the applicable statute of limitations and by the defenses of estoppel, waiver, ratification, and laches; Claimant's claims are barred because Mr. Blodget at all times conducted himself in compliance with the requirements of all applicable provisions of federal and state law; and as applicable, the defenses asserted by Merrill Lynch in response to the Statement of Claim are incorporated by reference.

Unless specifically admitted in its Answer, Respondent Merrill Lynch Pierce Fenner & Smith, Inc. denied the allegations made in the Statement of Claim and asserted the following defenses: Mr. Wallis fails to state a claim upon which relief can be granted; Mr. Wallis' claims are barred because Merrill Lynch had a good faith basis for its research opinions; Mr. Wallis' claims are barred because the risks inherent in the investments at issue were fully disclosed or known to Mr. Wallis and he assumed those risks; Mr. Wallis' claims are barred because he failed to mitigate his damages; Mr. Wallis' claims are barred by the applicable statute of limitations; Mr. Wallis' claims are barred because he suffered no damages by reason of the acts complained of in the Statement of Claim; Mr. Wallis' alleged damages were proximately caused by his own conduct; and, Mr. Wallis does not have a private right of action for alleged violation of NASD rules.

## RELIEF REQUESTED

Claimant requested an award in the amount of $3,000,000.00 as compensatory damages, plus interest, costs, attorney's fees, and disbursements. Claimant also requested punitive damages in the amount of $12,000,000.00 as Respondents engaged in willful or reckless conduct.

Respondent Merrill Lynch Pierce Fenner & Smith, Inc. requested that the claims asserted against them be denied in its entirety.

Respondent Henry M. Blodget requested that the claims asserted against him be denied in their entirety and that he be awarded his costs, attorney's fees, and that all references to the Statement of Claim be expunged from his CRD record.

## OTHER ISSUES CONSIDERED & DECIDED

On December 9, 2002, NASD Dispute Resolution made a preliminary determination to deny Claimant's Motion to Consolidate Arbitration numbers 02-02969; 02-03230, 03-04239, 024375, 02-05224, 02-05225 and 02-2816.

The panel deliberated on February 5, 2003 to consider Claimant's Motion to Consolidate or, in the Alternative, to Coordinate Discovery. The parties were advised of the Panel's decision on February 19, 2003. The Panel made the following ruling:

1. The panel has agreed to deny the motion to consolidate.

2. The panel has agreed to confirm the motion to coordinate discovery.

By order dated March 25, 2003, the Panel made the following ruling regarding Blodget's Motion to Dismiss:

> On March 20, 2003 commencing at 12 noon at the Renaissance Hotel in Oklahoma City, Oklahoma, the panel at an in-person hearing, heard the respondent through his attorney, Joseph Edmondson, present his case to dismiss him as a respondent. Attorney Ira Press represented the claimant in opposition.
>
> The panel granted the motion.

Respondent Merrill Lynch filed a Motion to prohibit Claimant, Claimant's witnesses, or Claimant's counsel (collectively "claimant") from directly or indirectly referring to, inquiring about, introducing, arguing or mentioning in any way, throughout the course of this arbitration proceeding, including but not limited to opening and closing arguments and questioning of witnesses, the Dinallo Affidavit or any "evidence" concerning settlement agreements between Merrill Lynch and the New York Attorney General ("NYAG"), the National Association of Securities and Exchange Commission, ("SEC"), or any other regulatory body (the "regulatory settlements") in which there was neither any admission or liability nor any adjucation of the merits.

The parties were advised of the Panel's decision on April 1, 2004. The Panel held a deliberation session by phone on March 29, 2004 and made the following ruling:

> Since we on the panel are very much aware of the settlement agreements mentioned above, it is our ruling that the Claimant may make brief reference to the matter during his opening and closing arguments.
>
> From the submitted pleadings, the panel is aware of the cited settlement agreements. While the panel rules that the Claimant is limited to making brief references to these matters during his opening and closing arguments, this ruling does not preclude the Claimant from bringing out any facts from the settlements that refer to Mr. Wallis' specific stock holdings.

By order dated April 16, 2003, the Panel made the following ruling:

The panel has read the respondent's motion and the claimant's answer and has denied the motion to reconsider and also denied the request for another pre-hearing conference.

The panel made its original ruling after agreeing with the claimant's opening statement in their motion to the consolidation of the cases or at minimum discovery coordination. On page 13, section II, the claimant states, "consolidation will expedite pre-hearing proceedings, reduce tremendous case and discovery duplication, avoid harassment of parties and witnesses from inquiries in multiple proceedings, and minimize the expenditure of time and money by all persons concerned."

In no way does this ruling restrict any of the parties in any of the individual proceedings from making motions to compel to the panels in each case per the NASD rules.

The Claimant's Pre-hearing Brief was filed on or about June 21, 2004.

Merrill Lynch's Pre-hearing Brief was filed on or about June 21, 2004.

Alice McInerney, Esq., Claimant's attorney, would not formally rest Claimant's case. Chairperson Sugerman proceeded to allow Respondent to present its case.

During the course of the hearing, Bruce Day, Esq., Merrill Lynch's attorney, made a Motion for a Directed Verdict. The Panel granted the Motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered. In either case, the parties have agreed to receive conformed copies of the award while the original(s) remain on file with the NASD Dispute Resolution (the "NASD").

## AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's claims, each and all, against Respondent Merrill Lynch Pierce Fenner & Smith, Inc. are denied and dismissed with prejudice;

2. Claimant's claims, each and all, against Respondent Henry M. Blodget are denied and dismissed with prejudice;

3. That to the extent not specifically awarded or otherwise provided for above, all other claims and requests for relief by any party hereto are denied with prejudice; and,

4. Other than the Forum Fees noted below, the parties shall each bear all other costs and expenses incurred by them in connection with this proceeding, including but not limited to attorneys fees.

**FEES**

Pursuant to the Code, the following fees are assessed:

**Filing Fees**

NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

Initial claim filing fee = $600.00

**Member Fees**

Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated person at the time of the events giving rise to the dispute. In this matter, the member firm is Merrill Lynch Pierce Fenner & Smith, Inc.

| | | |
|---|---|---|
| Member surcharge | $ | 3,750.00 |
| Pre-hearing process fee | $ | 750.00 |
| Hearing process fee | $ | 5,500.00 |
| Total Member Fees | $ | 10,000.00 |

**Adjournment Fees**

Adjournments requested during these proceedings:

July 7-9, 2003 Hearing Dates, adjournment by James Wallis and Merrill Lynch Pierce Fenner & Smith, Inc. (waived by the Panel) = $1,200.00

July 29-August 1, 2003 Hearing Dates, adjournment by James Wallis = $1,200.00

December 9-12, 2003 Hearing Dates, adjournment by James Wallis and Merrill Lynch Pierce Fenner & Smith, Inc. (waived by the Panel) = $1,500.00

**Forum Fees and Assessments**

The Arbitration Panel assesses forum fees for each hearing session conducted. A hearing session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | | | |
|---|---|---|---|---|---|
| 3 Pre-hearing sessions with one Arbitrator | | | x 450.00 | $ | 1,350.00 |
| | May 30, 2003 | 1 | Session | | |
| | June 2, 2003 | 1 | Session | | |
| | October 27, 2003 | 1 | Session | | |
| 2 Pre-hearing sessions with Panel | | | x 1,200.00 | $ | 2,400.00 |
| | January 28, 2003 | 1 | Session | | |
| | July 17, 2003 | 1 | Session | | |
| 7 Hearing sessions | | | x 1,200.00 | | 8,400.00 |
| | March 20, 2003 | 1 | Sessions | | |
| | June 29, 2004 | 2 | Sessions | | |
| | June 30, 2004 | 2 | Sessions | | |
| | July 1, 2004 | 2 | Sessions | | |
| | Total Forum Fees | | | $ | 12,150.00 |

The Arbitration Panel has assessed $12,150.00 of the forum fees to James Wallis.

**Fee Summary**

Claimant, James Wallis, shall be and hereby is liable for:

| | | |
|---|---|---|
| Initial Filing Fee | = $ | 600.00 |
| Adjournment Fee | = $ | 1,200.00 |
| Forum Fees | = $ | 12,150.00 |
| Total Fees | = $ | 13,950.00 |
| Less payments | = $ | -3,000.00 |
| Balance Due NASD Dispute Resolution | = $ | 10,950.00 |

Respondent, Merrill Lynch Pierce Fenner & Smith, Inc., shall be and hereby is liable for:

| | | |
|---|---|---|
| Member Fees | = $ | 10,000.00 |
| Total Fees | = $ | 10,000.00 |
| Less payments | = $ | -10,000.00 |
| Balance Due NASD Dispute Resolution | = $ | 0.00 |

**All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.**

## ARBITRATION PANEL

Irwin S. Sugerman - Public Arbitrator, Presiding Chair
Edwin E. O'Brien - Public Arbitrator
Craig H. Stanley - Non-Public Arbitrator

Concurring Arbitrators:

/s/ Irwin S. Sugerman
Irwin S. Sugerman
Public Arbitrator, Presiding Chair

07/15/04
Signature Date

/s/ Edwin E. O'Brien
Edwin E. O'Brien
Public Arbitrator

07/15/04
Signature Date

/s/ Craig H. Stanley
Craig H. Stanley
Non-Public Arbitrator

07/15/04
Signature Date

07/15/04
Date of service

**All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.**

**ARBITRATION PANEL**

Irwin S. Sugerman - Public Arbitrator, Presiding Chair
Edwin E. O'Brien - Public Arbitrator
Craig H. Stanley - Non-Public Arbitrator

Concurring Arbitrators:

Irwin S. Sugerman
Public Arbitrator, Presiding Chair

7-15-04
Signature Date

Edwin E. O'Brien
Public Arbitrator

Signature Date

Craig H. Stanley
Non-Public Arbitrator

Signature Date

Date of service

**All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.**

**ARBITRATION PANEL**

Irwin S. Sugerman - Public Arbitrator, Presiding Chair
Edwin E. O'Brien - Public Arbitrator
Craig H. Stanley - Non-Public Arbitrator

Concurring Arbitrators:

| | |
|---|---|
| Irwin S. Sugerman<br>Public Arbitrator, Presiding Chair | Signature Date |
| Edwin E. O'Brien<br>Public Arbitrator | July 15, 2004<br>Signature Date |
| Craig H. Stanley<br>Non-Public Arbitrator | Signature Date |

Date of service

**All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.**

ARBITRATION PANEL

Irwin S. Sugerman - Public Arbitrator, Presiding Chair
Edwin E. O'Brien - Public Arbitrator
Craig H. Stanley - Non-Public Arbitrator

Concurring Arbitrators:

| | |
|---|---|
| Irwin S. Sugerman<br>Public Arbitrator, Presiding Chair | Signature Date |
| Edwin E. O'Brien<br>Public Arbitrator | Signature Date |
| Craig H. Stanley<br>Non-Public Arbitrator | 7/15/04<br>Signature Date |

7/15/04
Date of service

Exhibit B

**Merrill Lynch**

## OPTION INFORMATION - INDIVIDUAL & JOINT ACCOUNT

PERSONAL AND FINANCIAL DATA FURNISHED BY CLIENT

ACCOUNT NUMBER: 585 27N60 | FC#: 8605 | NO. OF DEPENDENTS: 1 | HOME PHONE NUMBER: [redacted]

ACCOUNT TITLE: James W. Wallis | DATE OF BIRTH: 8/10/38 | MARITAL STATUS: Married

ACCOUNT TITLE (2ND PARTY): N/A | DATE OF BIRTH | MARITAL STATUS

STREET ADDRESS: C/O Ekok Inc 6410 B N. Santa Fe

CITY: Oklahoma City | STATE: OK | ZIP CODE: 73116

EMPLOYER'S NAME: Ekok, Inc | CHECK ☐ IF RETIRED, PREVIOUS EMPLOYER'S NAME | POSITION: owner/Pres. | BUSINESS PHONE NUMBER: 840 9196

SPOUSE'S NAME/2ND PARTY: PAT | CHECK ☒ NOT EMPLOYED | ☐ IF EMPLOYED, EMPLOYER'S NAME: N/A | POSITION: N/A | BUSINESS PHONE NUMBER: N/A

APPROXIMATE ANNUAL EARNINGS: [redacted]

SPOUSE'S APPROXIMATE INCOME (IF APPLICABLE): $ N/A

COMBINED TOTAL ANNUAL INCOME FROM ALL SOURCES: $ [redacted]

CLIENT'S LIQUID ASSETS: CASH/CASH EQUIVALENTS $ —0—; MARKETABLE SECURITIES [redacted]; OTHER ASSETS [redacted]

CLIENT EQUITY WITHOUT ... $ [redacted]

TOTAL OF 1 + 2 ... LESS TOTAL LIABILITIES: NET WORTH [redacted]

INVESTMENT OBJECTIVES: ☒ INCOME ☒ HEDGING ☒ SPECULATION

DOES CLIENT HAVE RESTRICTED STOCK? ☒ YES ☐ NO FRTH | IS CUSTOMER A CONTROL PERSON? ☒ YES ☐ NO

(IF YES, SHARES OF RESTRICTED STOCK OR STOCK HELD BY A CONTROL PERSON, EXCEPT TO THE EXTENT SALABLE UNDER RULE 144, MAY NOT BE USED TO COVER A SHORT POSITION IN CALL OPTION CONTRACTS, SATISFY MARGIN REQUIREMENTS OR BE DELIVERED AGAINST EXERCISE OF A PUT OR CALL OPTION.)

TYPE OF OPTION TRADING DESIRED - ☒ EQUITY ☒ INDEX

☒ BUY CALLS ☒ WRITE CALLS ☒ COVERED ☒ UNCOVERED | ☒ BUY PUTS ☒ WRITE PUTS ☒ COVERED ☒ UNCOVERED | ☒ SPREADS ☒ COMBINATIONS (STRADDLES, ETC)

LIST PREVIOUS ACCOUNTS WITH OTHER FIRMS

1. Stifel Nicolaus
2. Rauscher Pierce

CHECK ALL INVESTMENT EXPERIENCES THAT APPLY

☒ EQUITY OPTIONS 15 YRS. ☐ STOCK INDICES 0 YRS. ☒ STOCK 20 YRS.

☐ COMMODITIES 0 YRS. ☒ BONDS 20 YRS. ☐ OTHER (SPECIFY) oil & gas 20 YRS.

PRIOR TRADING ACTIVITY: ☐ SELDOM ☐ MODERATE ☒ ACTIVE

REQUIRED DOCUMENTS

"CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" PROVIDED TO CLIENT — DATE 5/4/94

POWER OF ATTORNEY ☐ LTD. ☐ GENERAL — NAME OF AGENT

CMA/CBA MARGIN ACCOUNT — ☒ CODE FOR HYPOTHECATION CONSENT FORM SIGNED BY CLIENT

DECLARATIONS | APPROVALS

TO BE COMPLETED BY RESIDENT VICE PRESIDENT / RESIDENT MANAGER PRIOR TO OPTION TRADING

APPROVED FOR OPTION TRADING AS FOLLOWS:

| | EQUITY | INDEX |
|---|---|---|
| BUY CALLS | ☒ | ☐ |
| BUY PUTS | ☒ | ☐ |
| WRITE COVERED CALLS | ☒ | ☐ |
| WRITE UNCOVERED CALLS | ☐ | ☐ |
| WRITE COVERED PUTS | ☒ | ☐ |
| WRITE UNCOVERED PUTS | ☐ | ☐ |
| SPREADS | ☐ | ☐ |
| COMBINATIONS, STRADDLES | ☐ | ☐ |

WAL 00852

FINANCIAL CONSULTANT SIGNATURE: [signature] DATE 5/4/94

RESIDENT VICE PRESIDENT/RESIDENT MANAGER SIGNATURE (MUST BE F.C.O.P.) DATE

REGISTERED OPTION PRINCIPAL'S SIGNATURE (IF OTHER THAN RESIDENT VICE PRESIDENT/RESIDENT MANAGER): [signature] DATE 5/10/94

CE 1014 (REV 6/91) 5/5/94

BRANCH OFFICE COPY

## Standard Option Agreement

585 27N60

Merrill Lynch, Pierce, Fenner & Smith Incorporated:

In connection with any transaction executed by you on my behalf for the purchase and sale of put and call options. I agree as follows:

1. All transactions shall be subject to the constitution, rules, regulations, customs, and usages of the exchange, or market and its clearing house, if any, where executed. I further agree that I will not, either alone or in concert with others violate the position or exercise limits which the Exchanges or marketplace where executed, may establish from time to time as set forth in the booklet "Characteristics and Risks of Standardized Options."

2. In the case of option sold or written by me in a cash account:
   (a) With respect to a call option which if exercised against me will require the delivery of securities sold. I will keep such securities in my account with you until the expiration of the option period, and will not sell or withdraw such securities. If the option is exercised, you may deliver such securities to the purchaser without previous notice to me.
   (b) With respect to any put option, which if exercised against me will require payment for securities purchased, I will keep in my account sufficient funds for such payment until the expiration of the option period, and will not withdraw such funds or utilize them for any purpose. If the option is exercised, you may use such funds for the purpose of such securities without previous notice to me.

3. Any securities and funds held by you in any account of mine with you shall be held by you as security for the performance by me of my obligations to you under this agreement.

4. As option transactions involve a high degree of risk, I understand that:
   (a) I should not purchase an option unless I am able to sustain a total loss of the premium and transaction costs, and I should not write a call option unless I either own the underlying security (or a security convertible, exchangeable, or exercisable into such underlying security) or am able to sustain substantial financial losses, and that I should not write a put option unless I am able to sustain substantial financial losses.
   (b) I may not be able to close a position in the event that a secondary market in the option ceases to exist or the listing exchange restricts or suspends trading in the options.

5. I have been advised of and agree to abide by your policies and federal regulations regarding margining of options and related transactions.

6. I agree to advise you of any changes in my financial situation and needs, experience, or investment objective.

7. In case of my insolvency, death or attachment of my property, you may, with respect to any pending options, take such steps as you consider necessary to protect yourself against loss.

8. Any agreement by me with you, whether previously or hereafter made applicable to any account of mine with you, shall also apply to such option transactions except to the extent which it conflicts with this agreement. In the event of a conflict, this agreement shall control, and where this is no conflict, each provision of each agreement shall apply.

9. • ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
   • THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
   • PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.
   • THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND AND PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
   • THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

   I/WE AGREE THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US, INCLUDING, BUT NOT LIMITED TO, THOSE INVOLVING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED ONLY BEFORE THE NEW YORK STOCK EXCHANGE, INC., THE AMERICAN STOCK EXCHANGE, INC., OR ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE, THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., OR THE MUNICIPAL SECURITIES RULEMAKING BOARD, AND IN ACCORDANCE WITH ITS ARBITRATION RULES THEN IN FORCE. I/WE MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE CONDUCTED BEFORE THE NEW YORK STOCK EXCHANGE, INC., THE AMERICAN STOCK EXCHANGE, INC., OTHER EXCHANGES, THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULEMAKING BOARD, BUT IF I/WE FAIL TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO YOU AT THE OFFICE WHERE I/WE MAINTAIN MY/OUR ACCOUNT, BEFORE THE EXPIRATION OF FIVE DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM YOU TO MAKE SUCH ELECTION, THEN YOU MAY MAKE SUCH ELECTION. JUDGMENT UPON THE AWARD OF ARBITRATORS MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

   NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:
   i. THE CLASS CERTIFICATION IS DENIED; OR
   ii. THE CLASS IS DECERTIFIED; OR
   iii. THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.

   SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

10. I understand that exercise assignment notices for option contracts are allocated among customers short positions in accordance with the date of the transaction which established the short position. Positions which were established earliest will be assigned first ("First-In, First-Out"). A more detailed description of MLPF&S's allocation procedure is available upon request.

11. Absent the written designation of an agent to transact business on my behalf (power of attorney), I alone may make trading decisions in my account; however, unless I give specific instructions to the contrary, you may exercise discretion in the selection of the exchange or marketplace for the execution of multiply traded options.

12. THIS AGREEMENT AND ITS ENFORCEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

I (WE) HAVE RECEIVED AND READ THE BOOKLET "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND ARE AWARE OF THE SPECIAL RISKS ATTENDANT TO OPTION TRADING. THE STATEMENTS CONTAINED ON THIS FORM ARE ACCURATE.

BY SIGNING THIS AGREEMENT, I/WE ACKNOWLEDGE (1) THAT, IN ACCORDANCE WITH PARAGRAPH 9, I/WE ARE AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.

[signature] James W. Wallis — CLIENT'S SIGNATURE | 5/4/94 — DATE SIGNED

SPOUSE'S SIGNATURE (REQUIRED FOR JOINT ACCOUNTS) | DATE SIGNED